UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: SCOR HOLDING (SWITZERLAND) AG SECURITIES LITIGATION | Case No. 04 Civ. 7897 (DLC)<br><br>Hon. Denise Cote |

### LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF DISTRIBUTION PLAN

Lead Plaintiff, the Public Employees' Retirement System of Mississippi, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, respectfully submits this memorandum in support of its motion for entry of the [Proposed] Order Approving Distribution Plan (the Distribution Order") in the above-captioned action (the "Action") as set forth in the accompanying Declaration of Stephen J. Cirami in Support of Lead Plaintiff's Motion for Approval of Distribution Plan (the "Cirami Declaration" or "Cirami Decl.") submitted on behalf of the Court-approved Claims Administrator in the Action, The Garden City Group, Inc. ("GCG").

If granted, the motion will permit the distribution of settlement proceeds to Class Members whose Proofs of Claim are accepted by the Court. More specifically, the proposed Distribution Order will, *inter alia*: (i) approve the administrative determinations of GCG accepting and rejecting the Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Funds to claimants whose claims have been accepted as valid and approved by the Court; (iii) direct that distribution checks state that the check must be cashed within 120 days after the issue date; (iv) direct that Authorized Claimants will forfeit all recovery from the Settlements if they fail to cash their distribution checks in a timely manner; (v) adopt the

recommended plan for the funds remaining following the Distribution; (vi) release claims related to the claims administration process; (vii) approve GCG's fees and expenses incurred and to be incurred in connection with the administration of the Settlements; (viii) authorize destruction of Proof Claim forms after the Distribution; and (ix) provide that the court retains jurisdiction to consider any further applications concerning the administration of the Settlements, and such other and further relief as the Court deems appropriate.

## BACKGROUND

The terms of the Settlements of this Action are embodied in the Stipulation of Settlement as to SCOR Holding (Switzerland) AG (the "SHS Stipulation") and the Amended Stipulation of Settlement as to Zurich Financial Services (the "ZFS Stipulation"; collectively with the SHS Stipulation, the "Stipulations"), each dated July 25, 2008.[1] Pursuant to the Stipulations, defendants collectively paid $84.6 million in cash, which was deposited into interest-bearing escrow accounts for the benefit of the Class (the "Settlement Funds").[2]

On August 11, 2008, this Court entered an Order Preliminarily Approving Proposed Settlement (Dkt. 251) ("the "Preliminary Approval Order"). Pursuant to that Order, Lead Counsel retained GCG to print and mail copies of the Notice of: (1) Pendency and Proposed Settlements of Class Action and (2) Hearing on Proposed Settlements (the "Notice") and the Proof of Claim and Release form (the "Proof of Claim" and, together with the Notice, the "Claim Packet") to potential members of the Class, to publish the Summary Notice, to process the Proofs of Claim

---

[1] Unless otherwise indicated, all terms with initial capitalization used herein shall have the meanings ascribed to them in the Stipulations and the Cirami Declaration.

[2] The Class Certification Orders dated March 6, 2008 and March 19, 2008 and the Preliminary Approval Order define the Class as "all persons or entities who, during the Class Period, (i) were U.S. residents and purchased Converium Common Stock on the SWX Swiss Exchange and/or (ii) purchased Converium American Depositary Shares ("ADSs") on the New York Stock Exchange," subject to certain exclusions as set forth in the Class Certification Orders and the Preliminary Approval Order.

submitted, and to effectuate distribution of the Net Settlement Funds.  On December 12, 2008, this Court held a hearing to consider the proposed Settlements and by Order and Final Judgment dated December 12, 2008 (Dkt. 264), the Court approved the Settlements and directed the parties to implement and consummate the Stipulations in accordance with their terms and provisions.

The Final Settlement Date has occurred and the Claims Administrator has completed the processing of Proofs of Claim submitted in the Action.  Accordingly, pursuant to paragraph II.F.8 of the SHS Stipulation and paragraph II.E.8 of the ZFS Stipulation, the Net Settlement Funds may be distributed to Authorized Claimants upon entry of an appropriate order by the Court.

## **CLAIMS ADMINISTRATION**

As set forth in the accompanying Declaration Of Stephen J. Cirami In Support Of Lead Plaintiff's Motion For Approval Of Distribution Plan (the "Cirami Declaration" or "Cirami Decl."), GCG disseminated a total of 14,154 copies of the Claim Packet to potential Class Members and nominees.  Cirami Decl. ¶ 3.

Under the terms of the Stipulations and the Notice, all Class Members wishing to participate in the distribution of the Net Settlement Funds were required to submit Proof of Claim forms by mail, postmarked no later than December 9, 2008.  As detailed in the accompanying Cirami Declaration, GCG has received and processed 1,636 Proofs of Claim.  Cirami Decl. ¶ 5.

Many of the Proofs of Claim initially submitted were incomplete, unsigned, not properly documented, filed by a Claimant who was not a Class Member or were otherwise deficient.  Cirami Decl. ¶¶ 18-19.  To the extent that a Proof of Claim was wholly deficient (for example, if the Proof of Claim was missing documentation for the entire Proof of Claim, if the Claimant did

3

not sign the Proof of Claim or did not provide enough information to calculate the Proof of Claim, or if the Proof of Claim was determined to have no Recognized Loss Amount when calculated under the Court-approved Plan of Allocation), GCG sent a rejection letter to the Claimant describing the defect(s) with his, her or its Proof of Claim and stating what, if anything, was necessary to cure the Proof of Claim.  *Id*. ¶ 20.  GCG also mailed rejection letters to each Claimant whose Proof of Claim was determined to be partially deficient (for example, if the Claimant was missing documentation for part of the Proof of Claim, or did not supply all transactional information), advising the Claimant of the defect(s) in the Proof of Claim and stating what was necessary to cure such defect(s), and informing that Claimant that, unless the defect(s) were cured, the Proof of Claim would only be eligible to the extent it was complete and calculated to a Recognized Loss Amount.  *Id*. ¶ 22.  Copies of sample rejection letters are attached as an exhibit to the Cirami Declaration.  Cirami Decl. ¶ 23 and Exhibit A thereto.

GCG carefully reviewed Claimants' responses to rejection letters and worked with Claimants to resolve deficiencies where possible.  Cirami Decl. ¶ 19.  In this case, one common example of a non-conforming Proof of Claim was a Proof of Claim that included trades of Converium common stock on the SWX during the Class Period where the Claimant did not verify if he, she or it was a U.S. resident during the Class Period.  In order to determine whether such Claimants were eligible or were excluded from the Class, GCG dedicated a significant amount of time and resources to Claimant outreach in order to obtain written confirmation of U.S. residency when it was not indicated on the Proof of Claim form.  *Id.* ¶ 18.  After all responses to deficiency letters were received and processed, GCG called Claimants with still-deficient Proofs of Claim to assist them in curing the deficiencies.  *Id.* ¶¶ 24-27.

4

Consistent with the terms of the Stipulations (see SHS Stipulation ¶ II.F.7 and ZFS Stipulation ¶ II.E.7), all rejection letters specifically advised the claimant that he, she or it had the right, within twenty (20) days after the mailing of the rejection letter, to contest the rejection of the claim and request Court review of the disposition of the claim. Cirami Decl. ¶ 23 and Exhibit A. No claimant is seeking the Court's review of GCG's administrative determination to partially or wholly reject his, her or its Proof of Claim. Cirami Decl. ¶¶ 19, 23.

As set forth in the Cirami Declaration, of the 1,636 claims received, GCG has determined that 589 are acceptable in whole or in part, and that 1,047 should be wholly rejected because they are ineligible, wholly deficient, or have no Recognized Loss Amount when calculated in accordance with the Court-approved Plan of Allocation. Cirami Decl. ¶ 34.

The 1,636 Proofs of Claim received include 71 Proofs of Claim that were postmarked after the Court-approved claims filing deadline of December 9, 2008, of which 19 were, but for the late submission, otherwise eligible. Cirami Decl. ¶ 28. While these 19 claims were late, they were received while the processing of timely claims was ongoing, and due to the amount of time needed to process the timely claims received, the processing of these late claims did not delay the completion of the claims administration process or the distribution of the Net Settlement Funds. *Id*. Lead Plaintiff believes that, when the equities are balanced, it would be unfair to prevent an otherwise eligible claim from participating in the Net Settlement Funds solely because it was submitted after the Court-approved claims filing deadline, when it was submitted while claims were still being processed. Accordingly, Lead Plaintiff requests that the Court approve GCG's administrative determination to accept these late, but otherwise eligible claims.[3]

---

[3] The Court has discretion to accept Proofs of Claim submitted after the approved filing deadline under the terms of the Plan of Allocation and the Stipulations. The Plan of Allocation set out in the Notice provides that: "*Unless the Court otherwise orders*, any Class Member who fails to

In order to facilitate the efficient distribution of the Net Settlement Funds, however, there must be a final cut-off after which no other claims may be accepted. Accordingly, Lead Plaintiff respectfully requests that an Order be entered that no Proof of Claim received after September 24, 2010 be eligible for payment for any reason whatsoever.

Lead Plaintiff further requests that the Court approve GCG's administrative determinations accepting and rejecting claims as set forth in the Cirami Declaration. As noted above, there are no outstanding disputes with Claimants as to GCG's determinations.

## FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with GCG's agreement with Lead Counsel to act as the Claims Administrator, GCG was responsible for, among other things, mailing and publishing notice to the Class, creating and maintaining case-specific telephone hotlines and an email address, processing the claims, and allocating and distributing the Net Settlement Funds to Authorized Claimants. As set forth in the Cirami Declaration, GCG's fees and expenses for its work performed and to be performed on behalf of the Class total $357,378.19. Cirami Decl. ¶ 37. To date, GCG has received payments totaling $319,411.35.[4] Accordingly, there is an outstanding balance due to GCG of $37,966.84. *Id*. Lead Plaintiff respectfully requests that the Court approve all of GCG's fees and expenses.

---

submit a Proof of Claim form postmarked no later than December 9, 2008 shall be forever barred from receiving payments pursuant to the Settlements . . ." Notice ¶ 42 (emphasis added). The Stipulations similarly provide that "Unless otherwise ordered by the Court, any Class Member who fails to submit a valid and timely Proof of Claim shall be barred from receiving a distribution . . ." SHS Stipulation ¶ II.F.9; ZFS Stipulation ¶ II.E.9.

[4] Under the terms of the SHS Stipulation (Paragraph II.C.5), the ZFS Stipulation (Paragraph II.B.5) and the Preliminary Approval Order (¶ 11b), Lead Counsel were directed to pay all reasonable costs incurred in identifying and notifying Class Members and administering the Settlements without further order of the Court.

## **DISTRIBUTION PLAN OF THE NET SETTLEMENT FUNDS**

As set forth in detail in the Cirami Declaration, and consistent with the Stipulations, GCG has completed the processing of all claims, and all claimants whose claims have been rejected, in whole or in part, have been notified and provided the opportunity to contest such rejection. Accordingly, pursuant to paragraph II.F.8 of the SHS Stipulation and paragraph II.E.8 of the ZFS Stipulation, Lead Plaintiff, on notice to Defendants' counsel, respectfully moves for an order approving GCG's determinations concerning the acceptance and rejection of the claims submitted by Class Members and approving a plan for distribution of the Net Settlement Funds to Authorized Claimants.[5]

Lead Plaintiff respectfully requests that the Court authorize and direct the distribution of the Net Settlement Funds to those Authorized Claimants listed in Exhibits B-1 and B-2 to the Cirami Declaration. Under the Court-approved Plan of Allocation and as set forth in the Cirami Declaration (¶ 38), GCG will distribute 100% of the available balance of the Net Settlement Funds, after deducting the payments previously allowed and requested herein, and after payment of any estimated taxes and the costs of preparing appropriate final tax returns and any escrow fees, to the Authorized Claimants based on their Recognized Loss Amounts in comparison to the total Recognized Loss Amounts of all Authorized Claimants (the "Distribution"); except for Authorized Claimants whose prorated payment would be less than $10 in which case, pursuant to the Plan of Allocation, the payment amount will be increased to $10 (*id.*)

---

[5] Under the terms of the Stipulations, specifically the SHS Stipulation ¶ II.E.3 and ZFS Stipulation ¶ II.D.4, Defendants have no role in or responsibility for the administration of the Settlement Funds or processing of claims, including determinations as to the validity of Proofs of Claims, the amount of the claims, or the distribution of the Net Settlement Funds.

**DISPOSITION OF ANY UNCLAIMED/UNCASHED BALANCE**

In order to encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to uncashed checks, Lead Plaintiff proposes that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]." In an effort to have as many Authorized Claimants as possible cash their checks, GCG will perform extensive follow up with Authorized Claimants who initially fail to cash their Distribution checks. Cirami Decl. ¶ 38(b) n.5.

Consistent with the Court-approved Plan of Allocation, if any funds remain in the Net Settlement Funds after the Distribution because of uncashed distributions or other reasons after such efforts, any balance remaining in the Net Settlement Funds one (1) year after the Distribution shall be redistributed to Authorized Claimants who have cashed their Distribution checks and who would receive at least $10.00 from such redistribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Funds for such redistribution. If any funds remain in the Net Settlement Funds six (6) months after such redistribution, then the balance will be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s) to be designated by Lead Counsel subject to Court approval.

**RELEASE OF CLAIMS**

In order to allow the full and final distribution of the Net Settlement Funds, it is necessary to bar any further claims against the Net Settlement Funds beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Funds or the Net

Settlement Funds, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiff respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Funds or the Net Settlement Funds from any and all claims arising out of the such involvement, and bar all Class Members, whether or not they receive payment from the Net Settlement Funds, from making any further claims against the Net Settlement Funds, Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Funds or the Net Settlement Funds beyond the amount allocated to Authorized Claimants.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff's Motion for Approval of Distribution Plan should be approved, and the proposed Order Approving Distribution Plan should be entered.

Dated: October 1, 2010                               Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

  /s/ Steven B. Singer
Steven B. Singer (SS-5212)
steven@blbglaw.com
Beata Gocyk-Farber (BGF-5420)
beata@blbglaw.com
Avi Josefson (AJ-3532)
avi@blbglaw.com
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

*Co-Lead Counsel for the Class and Counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi*

**COHEN MILSTEIN SELLERS &
   TOLL PLLC**
Steven J. Toll
Daniel S. Sommers
Matthew K. Handley
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-4600
Tel. (202) 408-4600

*Co-Lead Counsel for the Class*

**SPECTOR ROSEMAN KODROFF &
   WILLIS, P.C.**
Robert M. Roseman (RR-1103)
Mark S. Willis
Andrew D. Abramowitz
Daniel J. Mirarchi
Rachel E. Kopp
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel. (215) 496-0300

*Co-Lead Counsel for the Class*

#482549